RECEIVED

AUG 2 4 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| COURTNEY BOYD (AIS #208921), | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| V. | | 2:06-CV-511-WKW |
| | * | |
| DR. DARBOUZE, et al., | | |
| | * | |
| Defendants. | | |
| | * | |

**SPECIAL REPORT OF DEFENDANTS PRISON HEALTH SERVICES, INC., JEAN DARBOUZE, M.D., KAY WILSON, R.N., H.S.A. AND CYNTHIA WAMBLES, R.N.**

COME NOW Defendants, Prison Health Services, Inc. (incorrectly identified in the Plaintiff's Complaint as "Prison Health Care Services"), Jean Darbouze, M.D., Kay Wilson, R.N., H.S.A., and Cynthia Wambles, R.N. in response to this Honorable Court's Order and present the following Special Report with regard to this matter:

## I. INTRODUCTION

The Plaintiff, Courtney Boyd (AIS# 208921) is an inmate confined at Staton Correctional Facility located in Elmore County, Alabama. At all times pertinent to this lawsuit, however, Mr. Boyd was confined at Easterling Correctional Facility located in Clio, Alabama. (See Exhibit "A"). On June 8, 2006, Boyd filed a Complaint against Defendant PHS, the company that currently contracts with the State of Alabama to provide healthcare to inmates at Easterling and other correctional institutions in the State of Alabama; Jean Darbouze, M.D., Easterling's Medical Director; and Kay Wilson, R.N., H.S.A., Easterling's Health Services Administrator. (See Complaint). On June 16, 2006 the Plaintiff amended his Complaint to state allegations

against Cynthia Wambles, R.N., a Registered Nurse at Easterling. (See Amended Complaint). The Plaintiff alleges that these Defendants have violated his constitutional rights by denying him appropriate medical evaluation and/or treatment. (See Complaint). Specifically, Mr. Boyd claims that Dr. Darbouze has retaliated against him by failing to appropriately treat an alleged spinal condition, failing to provide him with appropriate specialty profiles, and failing to refer him for specialty evaluation. (See Complaint). Mr. Boyd also claims that Nurse Wilson has retaliated against him by refusing to provide him with appropriate medical care for the same spinal condition and by failing to provide him with specialty evaluation. (Id.) Mr. Boyd claims that Nurse Wambles failed to provide him with appropriate treatment on June 11, 2006 subsequent to suffering an alleged collapse. (See Amended Complaint). At all pertinent times, Dr. Darbouze, Nurse Wilson and Nurse Wambles were employed by PHS. The Plaintiff demands an evidentiary hearing, as well as punitive and compensatory damages in the amount of $1,050,000.00. (See Complaint).

As directed, the Defendants have undertaken a review of Plaintiff Boyd's claims to determine the facts and circumstances relevant thereto. At this time, the Defendants are submitting this Special Report, which is supported by a Certified Copy of Plaintiff Boyd's medical records (attached hereto as Exhibit "A"), the Affidavit of Jean Darbouze, M.D. (attached hereto as Exhibit "B"), the Affidavit of Kay Wilson, R.N., H.S.A. (attached hereto as Exhibit "C") and the Affidavit of Cynthia Wambles, R.N. (attached hereto as Exhibit "D"). These evidentiary materials demonstrate that Plaintiff Boyd has been provided appropriate medical treatment at all times, and that the allegations in his Complaint are without merit.

## II. NARRATIVE SUMMARY OF FACTS

At all pertinent times, Courtney Boyd (AIS# 208921) was incarcerated as an inmate at Easterling Correctional Facility. (See Exhibit "A"). Mr. Boyd has been seen and evaluated by Easterling's medical or nursing staff, and has been referred to an appropriate care provider and given appropriate care, each time he has registered any health complaints at Easterling. (See Exhibits "B," "C" & "D").

Mr. Boyd has made a complaint in this case that Dr. Darbouze has retaliated against him by failing to provide him with appropriate evaluation and treatment for an alleged spinal disorder. (See Complaint). Mr. Boyd's allegations in this regard are completely unfounded as this inmate has been afforded appropriate care at all times. (See Exhibit "B").

Mr. Boyd was transferred to Easterling Correctional Facility on August 17, 2005. (See Exhibit "B"). He had a back brace in his possession. (Id.) Dr. Darbouze provided Mr. Boyd with initial evaluation five days later on August 22, 2005. (Id.) A review of this inmate's medical history indicated that he has a history of making subjective complaints for lower back pain subsequent to being involved in a physical altercation in the year 2003. (Id.)

Mr. Boyd's diagnostic evaluation showed that he was negative for any significant spinal condition. (Id.) Specifically, Mr. Boyd was afforded a lumbar spine series on February 25, 2003, which was normal. (Id.) No degenerative disease, malalignment or fracture was noted. (Id.) On July 3, 2003, he was afforded an x-ray of the right ribs and chest, both of which were normal. (Id.) On June 7, 2004, Mr. Boyd received a second lumbar series which was also negative for injury. (Id.) Specifically, it was noted that Mr. Boyd's vertebral body heights and disc spaces were well maintained. (Id.) There was no evidence of fracture or subluxation and no

spondylolisthesis was detected. (Id.) Mr. Boyd's pedicles were shown to be intact with normal alignment. (Id.)

On April 13, 2005 (some four months prior to be transferred to Easterling) Mr. Boyd was afforded a third lumbar spine series which was negative for abnormality as well. (Id.) Due to the existence of some artifact in the film, however, Mr. Boyd was afforded a fourth lumbar series on April 18, 2005, which showed no definite abnormality with motion artifact noted. (Id.)

While these diagnostic films ordered for Mr. Boyd prior to becoming incarcerated at Easterling showed that he was negative for spinal injury, Dr. Darbouze issued him a number of specialty profiles including a "bottom bunk profile," a "back brace profile," and an "insoles profile." (Id.) Dr. Darbouze also prescribed him pain relieving medications including Motrin, Percogesic, Tylenol, Naproxen, and Flexeril. (Id.) He has been prescribed Zantac, Mylanta and Tums in order to combat potential stomach irritation associated with these pain relieving medications. (Id.) All of Mr. Boyd's medications have been adjusted as warranted by his changing condition. (Id.)

On April 21, 2006, Dr. Darbouze ordered Mr. Boyd a fifth lumbar series, to access whether his condition had changed within the year. (Id.) Again, this study showed no evidence of fracture or destructive bone disease and Mr. Boyd's spine was found to be properly aligned. (Id.) Out of an abundance of caution, Dr. Darbouze ordered a cervical spine x-ray on May 9, 2006 that was negative for fracture or subluxation. (Id.) These studies demonstrate that Mr. Boyd does not have cervical or lumbar spine disease. (Id.)

Subsequent to receiving the results of these studies, Dr. Darbouze evaluated Mr. Boyd on June 2, 2006 and discontinued his specialty profiles which were not medically indicated for his treatment. (Id.) During this evaluation, Mr. Boyd became verbally abusive and voluntarily

relinquished his back brace--which, also, was not medically indicated. (Id.) Dr. Darbouze has never retaliated against Mr. Boyd as he has alleged in his Complaint. (Id.)

Mr. Boyd also claims that Nurse Wilson has retaliated against him by failing to provide him with appropriate medical treatment for an alleged lumbar spine condition and by failing to send him for evaluation by a back specialist. (See Complaint). As Health Services Administrator, Nurse Wilson does not have the authority to refer inmates for specialty evaluation. (See Exhibit "C"). Moreover, Nurse Wilson is not responsible for designing this inmate's treatment plan or deciding what treatment is indicated for his medical condition. (Id.) Nurse Wilson defers to Mr. Boyd's treating physician, Dr. Jean Darbouze with regard to the care and treatment this inmate is provided. (Id.)

Mr. Boyd has filed several informal inmate grievances with Nurse Wilson regarding his perception of inadequate care provided to him by Dr. Darbouze. (Id.) Specifically, Mr. Boyd has asked Nurse Wilson on numerous occasions to provide him with specialty profiles. (Id.) On each occasion, Nurse Wilson has explained to Mr. Boyd that she is not responsible for determining what profiles are indicated for his medical treatment. (Id.) Nurse Wilson further explained to him that medical profiles can only be issued by Dr. Darbouze. (Id.) Nurse Wilson has not retaliated against Mr. Boyd in any way. (Id.)

Mr. Boyd amended his Complaint in this matter to allege that Nurse Wambles failed to provide him with appropriate medical evaluation on June 11, 2006. (See amended Complaint). Specifically, Mr. Boyd claims that Nurse Wambles failed to have him transferred to the infirmary on the evening of June 11th subsequent to receiving notice from an Alabama Department of Corrections Officer that he had suffered a collapse. (See Exhibit "D"). Mr. Boyd further alleges that after being brought to the infirmary, Nurse Wambles made a statement that he

was faking his condition. (Id.) Mr. Boyd's allegations in this regard are completely false, as Nurse Wambles has afforded him appropriate medical care at all times. (See Exhibit "D").

On June 11, 2006, Nurse Wambles was working during the second shift which begins at 2:30 p.m. and ends at 11:00 p.m. (Id.) On this date, Nurse Wambles never received any communication from any Alabama Department of Corrections Officer regarding Mr. Boyd. (Id.) Moreover, Nurse Wambles never made any indication to any officer that Mr. Boyd should not be transferred to the infirmary for treatment. (Id.)

Nurse Wambles does recall, however, that Mr. Boyd was brought to the infirmary at approximately 10:55 p.m. on this date with complaints of numbness in both legs. (Id.) In order to aid the nurse who evaluated Mr. Boyd, Nurse Wambles reviewed his medical chart and provided her with a medical history before her shift ended at approximately 11:00 p.m. (Id.) Nurse Wambles never made any statement to anyone that Mr. Boyd was faking his injury. (Id.) Nurse Wambles did not provide Mr. Boyd with any medical treatment, nor did she document the treatment he received on June 11th. (Id.)

Mr. Boyd's medical conditions and complaints have been evaluated in a timely fashion at Easterling Correctional Facility and his diagnosed conditions have been treated in a timely and appropriate fashion. (Id.) At all times, he has received appropriate medical treatment for his health conditions at Easterling. (Id.) At no time has he been denied any needed medical treatment. (Id.)

The appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.) At no time have the Defendants or any of the medical or nursing staff at Easterling, denied Mr. Boyd any needed medical treatment, nor have they ever acted with deliberate indifference to any serious medical need of Mr. Boyd. (Id.) At all

times, Mr. Boyd's known medical complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

### III. DEFENSES

The Defendants assert the following defenses to the Plaintiff's claims:

1.  The Defendants deny each and every material allegation contained in the Plaintiff's Complaint, or amended Complaint, and demand strict proof thereof.

2.  The Defendants plead not guilty to the charges in the Plaintiff's Complaint, or amended Complaint.

3.  The Plaintiff's Complaint, or amended Complaint, fails to state a claim against the Defendants for which relief can be granted.

4.  The Defendants affirmatively deny any and all alleged claims by the Plaintiff.

5.  The Plaintiff is not entitled to any relief requested in the Complaint, or amended Complaint.

6.  The Defendants plead the defense of qualified immunity and aver that the actions taken by the Defendants were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

7.  The Defendants are entitled to qualified immunity and it is clear from the face of the Complaint, or amended Complaint, that the Plaintiff has not alleged specific facts indicating that the Defendants have violated any clearly established constitutional right.

8.  The Defendants cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

9.  The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

10. The allegations contained in the Plaintiff's Complaint, or amended Complaint against the Defendants sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

11. The Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

12. The Defendants aver that they were at all times acting under color of state law and, therefore, they are entitled to substantive immunity under the law of the State of Alabama.

13. The Defendants plead the general issue.

14. This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

15. The Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

16. Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

17. The Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other physicians and nursing staff would have exercised under similar circumstances and that at no time did they act toward the Plaintiff with deliberate indifference to a serious medical need.

18. The Defendants plead the affirmative defense that the Plaintiff's Complaint, or amended Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render him liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

19. The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

20. The Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

21. The Defendants plead the affirmative defense that they are not responsible for the policies and procedures of the Alabama Department of Corrections.

22. The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

23. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against them and that any such award would violate the United States Constitution.

24. The Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

25. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The Plaintiff has failed to pursue the administrative remedies available to him. See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning Defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

26.     The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Defendants who are entitled to immunity.

27.     The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

28.     The Plaintiff has failed to comply with 28 U.S.C. § 1915_with respect to the requirements and limitations inmates must follow in filing <u>in forma pauperis</u> actions in federal court.

29.     Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

30.     The Defendants assert that the Plaintiff's Complaint, or amended Complaint, is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court pursuant to 42 U.S.C. § 1988 to award these Defendants reasonable attorney's fees and costs incurred in the defense of this case.

31.     The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See <u>Marie v. Nickels</u>, 70 F., Supp. 2d 1252 (D. Kan. 1999).

## IV. <u>ARGUMENT</u>

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the

complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of Boyd's medical records reveals that Boyd has been given appropriate medical treatment at all times. (See Exhibits "A", "B," "C" & "D"). All of the allegations contained within Boyd's Complaint and amended Complaint are either inconsistent with his medical records, or are claims for which no relief may be granted. (Id.) Therefore, Boyd's claims against the Defendants are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, Boyd must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Boyd must allege and prove that he suffered from a serious medical need, that the Defendants were deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See

Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of Boyd's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Boyd cannot carry his burden. The evidence submitted with this Special Report clearly shows that the Defendants did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that Boyd's claims are without merit. Appropriate standards of care were followed at all times. (Id.) These facts clearly disprove any claim that the Defendants acted intentionally or recklessly to deny treatment or care.

The Defendants are, further, entitled to qualified immunity from all claims asserted by Boyd in this action. There is no argument that the Defendants were not acting within the scope of their discretionary authority. See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because the Defendants have demonstrated that they were acting within the scope of their discretionary authority, the burden shifts to Boyd to show that the Defendants violated clearly established law based upon objective standards. Eubanks, 40 F. 3d at 1160. The Eleventh Circuit requires that before the Defendants' actions can be said to have violated clearly established constitutional rights, Boyd must show that the right allegedly violated was clearly established in a fact-specific, particularized sense.

Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)). The question that must be asked is whether the state of the law in 2005- 2006 gave the Defendants fair warning that their alleged treatment of Boyd was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, Boyd must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendants to the fact that their practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Boyd's constitutional rights. All of Boyd's medical needs have been addressed or treated. (See Exhibits "A", "B," "C" & "D"). The Defendants have provided Boyd with appropriate medical care at all times. (Id.)

Finally, pursuant to the Court's Order, the Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden.

## V. <u>CONCLUSION</u>

The Plaintiff's Complaint, as amended, is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. Accordingly, the Defendants request that this Honorable Court either dismiss the Plaintiff's Complaint, as amended, with prejudice, or enter a judgment in their favor.

Respectfully submitted,

_____
L. Peyton Chapman, III
Alabama State Bar Number CHA060
R. Brett Garrett
Alabama State Bar Number GAR085
Attorneys for Defendants Prison Health
Services, Inc., Jean Darbouze, M.D., Kay
Wilson, R.N., H.S.A., and Cynthia Wambles,
R.N.

RUSHTON, STAKELY, JOHNSTON &
GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3138
Fax: (334) 481-0808
E-mail: bg@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by U.S. Mail this the 24th day of August, 2006, to:

Courtney Boyd (AIS# 208921)
Staton Correctional Facility
P.O. Box 56
Elmore, AL 36025

_____
R. Brett Garrett GAR085
Attorney for Defendants Prison Health Services, Inc., Jean Darbouze, M.D., Kay Wilson, R.N., H.S.A., and Cynthia Wambles, R.N.