Boyd's cognition appears appropriate for his level of education. He verbalizes understanding of the questions he is being asked. Psychologically, the patient appears embarrassed, verging on humiliated, as indicated by loss of eye contact and downcast gaze when reporting the details of the June 30, 2003, incident, as they specifically relate to a guard stripping him down to his undergarments and fondling his buttocks with a club while making inappropriate sexual remarks. The most notable abnormalities found on my examination were as follows:

> There is significant muscle spasm in the paraspinous or erector spinae muscles from the lower thoracic through the low lumbar region of the spine.
>
> Bilateral lumbar pain reported 6-7 (on a scale of 1 to 10) with resisted flexion and extension of the knees.
>
> Pain reported at only 20° flexion at the waist with a resulting severe limitation of mobility in the spine. Limited torsion capability at the waist due to decrease range of motion in spine for twisting.

### Conclusions

I often ask patients to reproduce maneuvers that reportedly cause pain, but do so in a way that they do not realize I am examining their response. For example, in Mr. Boyd's case, there was severe limitation in spine motion. He was only able to flex at the waist to twenty degrees (20°). In an attempt to verify this disability, I created a situation in which he was called upon to bend over when that was not the skill/ability being tested. To such end, I asked him to remove his socks and shoes so I could check his feet. In a manner consistent with patients having limited range of motion in their spine, he squatted to remove his shoes and socks. This is the type of internal validity of an examination that must exist for me to consider a patient's complaints and the physical findings of the examination reliable.

Also of note is Mr. Boyd's pain scale use. He volunteered the rating of 6-7 out of 10 without my prompting. Many patients automatically rate their pain as 10 out of 10 but do not have other evidence of that level of pain such as elevated heart rate and blood pressure. 6-7 out of 10 pain does occur with the muscle and back injuries seen in Mr. Boyd and is associated with routine daily activities. His story is not exaggerated based on his tendency to accurately report pain.

*Exhibit C*

3

In summary, my examination of Mr. Boyd and the other items noted above causes me to conclude that Mr. Boyd's current physical condition is consistent with the reported mechanism of injury. Mr. Boyd's physical condition is similar to many other blunt force and contusion-type injuries to the trunk that I have seen in my practice. The type of physical insult described results in the type of injuries suffered, pain described, and disability and incapacitation observed in Mr. Boyd. The effect on his state of health is a direct impact of the loss of wellness in this previously healthy young person.

Sadly, Mr. Boyd is not a person with unlimited employment prospects. He is not a college graduate suited for office work. He has minimal education compared to most people in his generation. He is probably intellectually suited for a trade job. Construction, maintenance, or factory work would be a suitable job for his educational background. They are all fine jobs, but not for Mr. Boyd. Limitations in his physical abilities severely restrict his ability to pursue a job on release. He is not capable of any bending, twisting, kneeling, above the head or lifting work whatsoever. He does not have a medical problem correctable by surgery. Chronic muscle spasm responds somewhat to medicines and therapy. Therapy is obviously not within his reach at present. With the severe limitations in his future ability to perform a job noted above, Mr. Boyd has very minimal rehabilitation potential. Courtney Boyd has been given a life-long disability.

### Testimonial Aids and Fees

In explaining my conclusions and opinion, I intend to use a spine model and medical graphics, which I believe may enhance understanding of my anticipated testimony as to the dynamics of motion and weight-bearing in the human body. The purpose of these visual aides would be to show aberrant postures resulting from muscle spasm as well as to illustrate the large muscle groups referred to in my exam.

In this case, I am charging my practice's customary fees for "non-practice" services:

- Travel - $100.00 per hour, plus standard mileage
- Patient examination - $100.00 per hour
- Testimony - $250.00 per hour
- Preparation of reports/document review - $100.00 per hour
- Expenses such as facsimiles, photocopying, equipment, anatomical models at actual cost only.

My conclusions and opinions are based upon my education, training, experience, my standard medical reference materials, my medical examination of Mr. Boyd, and the medical history information made available to me at the time

Exhib. 4 C

(3)

of such examination. Should additional facts be made available, my opinions may be modified or additional opinions offered. If you have any questions or need additional information regarding this report, please contact me.

Sincerely,

*[signature]* M.D.

Amy L. Bentley, M.D.

Exhibit C

# Amy Lee Bentley, M.D.
107 Health Center Drive
Clanton, Alabama 35045
(205) 280-1010

| | |
|---|---|
| Education: | University of Alabama at Birmingham<br>Birmingham, Alabama<br>August 1991-August 1996<br>Bachelor of Science - Biology |
| | University of Alabama School of Medicine<br>Birmingham, Alabama<br>July 1995 - June 1999<br>Medical Doctor – June 6, 1999 |
| Residency: | Internal Medicine Residency<br>Baptist Health System, Inc.<br>Birmingham, Alabama<br>July 1, 1999 – June 30, 2002 |
| Licensure: | State of Alabama, February 2001 |
| Membership: | American College of Physicians, Member<br>Jefferson County Medical Society<br>Medical Association State of Alabama<br>American Board Internal Medicine 2002, Board Certified |
| Boards & Committees: | AMA – 1999 until present<br>MASA – 1999 until present<br>Credentialing committee at Chilton Medical Center |
| Research: | May 1997 – August 1997<br>UAB Department of Radiology, Division of Ultrasound Research Assistant. Carotid Artery Stenosis: Comparison of Ultrasound vs. Angiography in diagnosis |
| | June 1996 – September 1996<br>Greater Birmingham Cerebral Palsy Center<br>Data Collection - children with spinal bifida and cerebral palsy |


EXHIBIT C

May 1996 – August 1996
UAB Department of Radiology, Division of
Ultrasound Research Assistant. Renal Artery Stenosis and
Ultrasound criteria for patient Stratification into disease class

May 1996 – august 1997
UAB Department of Radiology, Division of
Ultrasound Research Assistant. Phase II and III trails
Of an ultrasound contrast agent for peripheral vascular studies

Volunteer Experience:

October 1997 – December 1997
Birmingham Fire & Rescue Service
Project Organizer

July 1997 – August 1997
Chilton County Medical Society
Student doctor examiner

May 1996 – October 1998
City of Thorsby
Community Programs

May 1996 – September 1994
Juvenile Diabetes/Diabetes Mellitus 1992
Project Coordinator

January 2002 – present
Chilton County Humane Society

August 2003 – May 2006
Chilton County School District
Team Physician

Legal Testimony: Talmadge Bradford vs. JR's Painting & Decorating 2005
Clarice Moss vs. Delta Airlines 2005

Occupational Medicine:
Account Director for CRH North American, International Paper, KMA, Merchant Company and Southeastern Anodizing