IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

COURTNEY BOYD (AIS #208921),   *

    Plaintiff,   *

V.   2:06-CV-511-WKW

DR. DARBOUZE, et al.,   *

    Defendants.   *

### RESPONSE TO COURT ORDER DATED OCTOBER 18, 2006

    COME NOW Defendants, Prison Health Services, Inc., Jean Darbouze, M.D., Kay Wilson, R.N., H.S.A., and Cynthia Wambles, R.N., and respectfully show in response to this Honorable Court's Order of October 18, 2006 as follows:

    1.    On October 18, 2006 this Honorable Court issued an Order directing Defendant Jean Darbouze, M.D. to show cause for discontinuing certain specialty profiles which were provided to the Plaintiff while he was incarcerated for a short period of time at Staton Correctional Facility. (See Order dated October 18, 2006).

    2.    Dr. Darbouze has submitted affidavit testimony in response to this Court's order showing that Mr. Boyd was transferred from Easterling Correctional Facility to Staton Correctional Facility on August 16, 2006. (See Exhibit "A"). While at Staton he was evaluated by Staton's Medical Director, Paul Corbier, M.D. (Id.) Dr. Corbier evaluated Mr. Boyd and wrote him multiple specialty profiles based on Mr. Boyd's subjective complaints for lower back pain. (Id.) Mr. Boyd returned to Easterling on October 4, 2006. (Id.)

3.  Dr. Darbouze evaluated Mr. Boyd on October 17, 2006 and discontinued those profiles assigned to him by Dr. Corbier at Staton. (Id.) Dr. Darbouze has testified that it is his medical judgment that specialty profiles are not indicated for Mr. Boyd's treatment. (Id.) He has not retaliated against Mr. Boyd. (Id.) To the contrary, Mr. Boyd's course of treatment under Dr. Darbouze's care has remained consistent based upon his medical judgment. (Id.)

4.  Dr. Darbouze also offers the affidavit testimony of Paul Corbier, M.D. in response to this Court's order. (See Exhibit "B"). Dr. Corbier's affidavit testimony establishes that he evaluated Mr. Boyd once on September 7, 2006. (Id.) On this date, Mr. Boyd indicated that he had a history that was significant for chronic lower back pain subsequent to falling from a top bunk in 2003. (Id.) During the examination, Dr. Corbier determined that he had complaints for tenderness over the posterior ribs. (Id.) However, Mr. Boyd was negative for straight leg raising and had no spine tenderness.[1] (Id.) Dr. Corbier prescribed him Flexril on a short term basis as well as a number of specialty profiles. (Id.)

5.  Dr. Corbier's affidavit testimony establishes that he ordered Mr. Boyd specialty profiles pending further evaluation of his condition. (Id.) He has testified that Dr. Darbouze has had the opportunity to evaluate and treat Mr. Boyd over an extended period of time, and, as such, does not dispute Dr. Darbouze's medical judgment in discontinuing this inmate's specialty profiles. (Id.)

WHEREFORE, the Defendant Jean Darbouze, M.D. moves this Honorable Court to deny Plaintiff's Motion to Compel filed on October 17, 2006.

---

[1] The straight leg raise test is used as a way to look for back pain caused by the disc pressing against the spinal nerves. The test is done with the patient lying on his or her back. The examiner lifts one of the patient's legs without help from the patient. The leg is kept straight at the knee. The test is stopped when the patient feels back or leg pain. If there isn't any pain or symptoms during this test, it is considered a negative test.

Respectfully submitted the 9th day of November, 2006.

        s/L. Peyton Chapman, III
        Alabama State Bar Number CHA060
        s/R. Brett Garrett
        Alabama State Bar Number GAR085
        Attorneys for Defendants Prison Health Services, Inc., Jean Darbouze, M.D., Kay Wilson, R.N., H.S.A., and Cynthia Wambles, R.N.

        RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
        Post Office Box 270
        Montgomery, Alabama 36101-0270
        Telephone: (334) 206-3138
        Fax: (334) 481-0808
        E-mail: bg@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by U.S. Mail this the 9th day of November, 2006, to:

Courtney Boyd (AIS# 208921)
Easterling Correctional Facility
200 Wallace Drive
Clio, Alabama 36017

        s/R. Brett Garrett GAR085
        Attorney for Defendants Prison Health Services, Inc., Jean Darbouze, M.D., Kay Wilson, R.N., H.S.A., and Cynthia Wambles, R.N.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| COURTNEY BOYD (AIS #208921), | * |
| Plaintiff, | * |
| V. | * 2:06-CV-511-WKW |
| DR. DARBOUZE, et al., | * |
| Defendants. | * |

## AFFIDAVIT OF JEAN DARBOUZE, M.D.

**BEFORE ME,** _Jean Darbouze_, a notary public in and for said County and State, personally appeared **JEAN DARBOUZE, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Jean Darbouze. I am a medical doctor and am over twenty-one years of age. I have been a licensed physician in Alabama since 1996 and have been board certified in internal medicine since 1997. From February of 2000 through February of 2004, and again from April 16, 2004 through the present, have I served as the Medical Director for Easterling Correctional Facility in Clio, Alabama. Since November 3, 2003, and at all times relevant to this case, my employment as Easterling's Medical Director has been with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

Courtney Boyd (AIS #208921) is an inmate who has been incarcerated at Easterling Correctional Facility since August 2005. I am familiar with Mr. Boyd and



have been involved with the medical services provided to him at Easterling. In addition, I have reviewed Mr. Boyd's Complaint in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Boyd was transferred to Easterling Correctional Facility on August 17, 2005. He had a back brace in his possession. I provided Mr. Boyd with initial evaluation five days later on August 22, 2005. A review of this inmate's medical history indicated that he has a history of making subjective complaints for lower back pain subsequent to being involved in a physical altercation in the year 2003.

Mr. Boyd's diagnostic evaluation showed that he was negative for any significant spinal condition. Specifically, Mr. Boyd was afforded a lumbar spine series on February 25, 2003, which was normal. No degenerative disease, malalignment or fracture was noted. On July 3, 2003, he was afforded an x-ray of the right ribs and chest, both of which were normal. On June 7, 2004, Mr. Boyd received a second lumbar series which was also negative for injury. Specifically, it was noted that Mr. Boyd's vertebral body heights and disc spaces were well maintained. There was no evidence of fracture or subluxation and no spondylolisthesis was detected. Mr. Boyd's pedicles were shown to be intact with normal alignment.

On April 13, 2005 (some four months prior to be transferred to Easterling) Mr. Boyd was afforded a third lumbar spine series which was negative for abnormality as well. Due to the existence of some artifact in the film, however, Mr. Boyd was afforded a fourth lumbar series on April 18, 2005, which showed no definite abnormality with motion artifact noted.

While these diagnostic films ordered for Mr. Boyd prior to becoming incarcerated at Easterling showed that he was negative for spinal injury, I gave him the benefit of the doubt and issued him a number of specialty profiles including a "bottom bunk profile," a "back brace profile," and an "insoles profile." I also prescribed him pain relieving medications including Motrin, Percogesic, Tylenol, Naproxen, and Flexeril. He has been prescribed Zantac, Mylanta and Tums in order to combat potential stomach irritation associated with these pain relieving medications. All of Mr. Boyd's medications have been adjusted as warranted by his changing condition.

On April 21, 2006, I ordered Mr. Boyd a fifth lumbar series, to access whether his condition had changed within the year. Again, this study showed no evidence of fracture or destructive bone disease and Mr. Boyd's spine was found to be properly aligned. Out of an abundance of caution, I ordered a cervical spine x-ray on May 9, 2006 that was negative for fracture or subluxation. These studies demonstrate that Mr. Boyd does not have cervical or lumbar spine disease.

Subsequent to receiving the results of these studies, I evaluated Mr. Boyd on June 2, 2006 and discontinued his specialty profiles which are not medically indicated for his treatment. During this evaluation, Mr. Boyd became verbally abusive and voluntarily relinquished his back brace--which, also, was not medically indicated. I have never retaliated against Mr. Boyd as he has alleged in his Complaint.

Based on my review of Mr. Boyd's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints have been evaluated and treated in a timely and appropriate fashion. Mr. Boyd has been seen and evaluated by the medical or nursing staff, and has

been referred to an appropriate care provider and given appropriate care, each time he has registered any health complaints at Easterling Correctional Facility.

At all times, myself and the other healthcare providers at Easterling have exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate.

At no time have I or any of the medical or nursing staff at Easterling Correctional Facility denied Mr. Boyd any needed medical treatment, nor have we ever acted with deliberate indifference to any serious medical need of Mr. Boyd. At all times, Mr. Boyd's medical complaints and conditions have been addressed as promptly as possible under the circumstances."

Further affiant sayeth not.

_____
JEAN DARBOUZE, M.D.

STATE OF ALABAMA    )
                    )
COUNTY OF Barbour   )

Sworn to and subscribed before me on this the 7th day of Nov, 2006.

_____
Linda A. Wilkinson
Notary Public
MyCommissionExpires
9/16/2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| COURTNEY BOYD (AIS #208921), | * |
| | * |
| Plaintiff, | * |
| | * |
| V. | 2:06-CV-511-WKW |
| | * |
| DR. DARBOUZE, et al., | * |
| | * |
| Defendants. | * |

### AFFIDAVIT OF PAUL CORBIER, M.D.

BEFORE ME, _____, a notary public in and for said County and State, personally appeared **PAUL CORBIER, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Paul Corbier. I am a medical doctor and am over twenty-one years of age. I have been a licensed physician in Alabama since 2004 and have been board certified in internal medicine since 1998. From July of 2006 through present I have served as Medical Director for Staton Correctional Facility. At all times relevant to this case, my employment as Staton's Medical Director has been with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

Courtney Boyd (AIS #208921) was transferred to Staton Correctional Facility on August 16, 2006. He remained incarcerated at this facility until he was transferred to


EXHIBIT B

Easterling Correctional Facility on October 4, 2006. During this time period I treated Mr. Boyd and have reviewed his medical records in preparation for making this affidavit.

I evaluated Mr. Boyd on September 7, 2006. On this date he indicated to me that he had a history that was significant for chronic lower back pain subsequent to falling from a top bunk in 2003. During the examination I determined that he had complaints for tenderness over the posterior ribs. However, he was negative for straight leg raising and had no spine tenderness.[1] I prescribed him Flexril on a short term basis as well as a number of specialty profiles.

I understand that there is an issue in this case that I provided Mr. Boyd with specialty profiles where Jean Darbouze, M.D. (Mr. Boyd's treating physician at Easterling) has not. I examined Mr. Boyd on only one occasion while at Staton. I ordered him specialty profiles pending further evaluation of his condition.

Dr. Darbouze has had the opportunity to evaluate and treat Mr. Boyd over an extended period of time. I certainly do not dispute his medical judgment in discontinuing this inmate's specialty profiles."

Further affiant sayeth not.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　PAUL CORBIER, M.D.

STATE OF ALABAMA    )
　　　　　　　　　　)
COUNTY OF Elmore    )

---

[1] The straight leg raise test is used as a way to look for back pain caused by the disc pressing against the spinal nerves. The test is done with the patient lying on his or her back. The examiner lifts one of the patient's legs without help from the patient. The leg is kept straight at the knee. The test is stopped when the patient feels back or leg pain. If there isn't any pain or symptoms during this test, it is considered a negative test.

Sworn to and subscribed before me on this the 9th day of November, 2006.

_____
Notary Public
My Commission Expires
12/06/2008