IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| COURTNEY BOYD, #208921, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACTION NO. 2:06cv511-WKW |
| | ) | (WO) |
| DR. DARBOUZE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Courtney Boyd ("Boyd"), a state prisoner, claims his civil rights were violated during his imprisonment in Easterling Correctional Facility. He names as defendants Prison Health Services, Dr. Jean Darbouze, and Nurses Kay Wilson, Cynthia Wambles, and Susanne Bush. Specifically, Boyd contends that the defendants acted with deliberate indifference to his health by failing to provide him adequate medical treatment for his back condition. Boyd also claims that the defendants retaliated against him for filing a lawsuit and/or grievances against healthcare officials by refusing to return his back brace, issue him profiles, or send him to a free-world specialist.

The defendants filed written reports and supporting evidentiary materials addressing Boyd's claims for relief. (Doc. Nos. 28, 86.) The court deems it appropriate to treat these responsive pleadings as a motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and the responses in opposition

filed by Boyd, the court concludes that the defendants' motion for summary judgment should be granted.

## I. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, Boyd is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will

bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Boyd has failed to demonstrate that there are any genuine issues of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. FACTS

The medical records indicate that a remarkable series of mishaps with his back have befallen Boyd throughout his term of imprisonment. Boyd's back problems first began in 2003, when he suffered a back injury in a "physical assault." (Doc. No. 28-5, p. 37.) On another occasion in February 2003, Boyd went to the health care unit, complaining of back pain and reporting that he "got dizzy and fell down" while walking out of the law library. (Doc. No. 28-9.) X-rays taken in February 2003 and June 2004 indicated that Boyd's lumbar spine fortunately was normal. (Doc. No. 28-8, pp. 33, 37.)

On March 3, 2005, Boyd went to the infirmary reporting that he injured his back when he slipped and fell down the stairs. (Doc. No. 28-5, p. 7.) Medical personnel conducted an examination and ordered no excessive bending for two days. (*Id*; Doc. No. 28-10, p. 9.) On March 28, 2005, Boyd submitted a sick call request, complaining of back pain. (Def's Ex. B, Doc. No. 28-5, p. 6 of 50.) The nurse conducted an examination, noting that Boyd

suffered from no back spasms and referring his complaints of pain to a health care provider for review. (*Id*.) On April 5, 2005, Boyd went to sick call with complaints of suffering from back pain for at least two weeks. (Def's Ex. B, Doc. No. 28-4, p. 49 of 50.) A nurse recommended no heavy lifting and referred Boyd to a physician. (*Id*.)

One week later, Boyd went to the health care unit once again complaining of severe back pain as the result of a fall from the top bunk of his bed. (Doc. No. 28-5, p. 5.) The physician astutely noted that there were no objective records to support Boyd's numerous complaints of back problems. (*Id*.) Even so, the doctor prescribed Motrin, ordered x-rays of Boyd's lumbar spine, and issued a 30-day bottom-bunk profile. (*Id*; Doc. No. 28-10, p. 8) On April 15 and 21, 2005, a radiologist reviewed Boyd's x-rays, noting that the x-rays revealed no definite abnormality, and suggested "follow up" due to a technically inadequate examination. (Doc. No. 28-8, pp. 28-29.) On April 28, 2005, the physician conducted an additional examination, noting that Boyd had no difficulty walking or standing and no paresthesia or weakness. (Doc. No. 28-5, p. 34.) Boyd was prescribed Motrin and range of motion exercises. (*Id*.) Undeterred by the obvious skepticism of the doctors and nurses about the severity of his back problem, Boyd persevered and submitted several other sick call requests in May 2005, requesting an examination by a free-world physician and profiles for a blanket, mattress, and no-prolonged-standing due to his "body parts . . . still going out." (Doc. No. 28-4, p. 50; Doc. No. 28-5, p. 17.) Shortly thereafter, Nurse Wambles conducted

an evaluation, noting that Boyd had a steady gait and possessed a back brace, and referred him to Dr. Darbouze. (Doc. No. 28-5, p. 17.)

In July 2005, medical personnel noted that Boyd "ambulated into ER [without] difficulty," that he was "able to bend over [without] diff[iculty], and that there were no "spasms noted to the back area." (Defs' Ex. B, Doc. No. 28-4, p. 47 of 50.) On July 20, 2005, a physician conducted an examination of Boyd, noting that Boyd's x-rays were normal, that his back did not appear to be sore or tender, and that a back brace was unnecessary at that time. (Doc. No. 28-5, pp. 32-33.) On August 17, 2005, both Boyd and his personal belongings, including a back brace, were transferred to Easterling Correctional Facility. (Doc. No. 28-5, p. 28 of 50.)

In March 2006, a nurse noted that, when Boyd was escorted from segregation to the health care unit for a body chart examination, Boyd was "laughing [and] cutting up [with] other inmates" and then "came walking in bent over." (Doc. No. 28-10, p. 22.) She also noted that Boyd appeared to be in no distress. (*Id.*) Boyd subsequently submitted a sick call request, in which he requested another back brace and a bottom bunk profile. (Doc. No. 28-5, p. 25.) During the following evaluation, a nurse noted that Boyd complained of lower back pain as the result of jumping on and off the top bunk of his bed and referred Boyd to Dr. Darbouze. (Doc. No. 28-5, p. 26 of 50.) The doctor issued 14-day profiles for a back brace and bottom bunk. (Doc. No. 28-10, p. 43.)

In April 2006, Boyd repeatedly sent sick call requests to medical personnel, complaining that his "arms, legs, feet[], penis is all gone out" and requesting an examination by a free-world physician and renewal of his profiles for a bottom bunk and no prolonged-standing. (Doc. No., 28-5, pp. 16, 20, 22.) After conducting an evaluation on April 16, 2006, Nurse Wambles referred Boyd to Dr. Darbouze. (Doc. No 28-5, p. 23 of 50.) One week later, Nurse Wambles conducted an additional evaluation of Boyd, specifically noting that he had "equal strength bilateral extremities" and that his previous lumbar spine x-ray revealed no abnormalities. (Doc. No. 28-5, p. 21.) The nurse again referred Boyd to Dr. Darbouze. (*Id.*) The following day, a technician performed x-rays of Boyd's spine, noting that his vertebrae were well aligned and showed no evidence of fracture or destructive bone disease. (Doc. No. 28-2, p. 27.) On May 8, 2006, a radiologist conducted x-rays of Boyd's back, assessing that his cervical spine appeared normal with no fracture or subluxation. (Doc. No. 28-8, p. 28.)

On May 10, 2006, Boyd submitted an inmate grievance, complaining that he was "still having problem[s] with [his] legs," and that he needed to see a doctor, as well as the issuance of a no-prolonged-standing profile. (Doc. No. 126-2, p. 4.) On that same day, Dr. Darbouze issued six-month profiles for a back brace, bottom bunk, and insoles. (Doc. No. 28-10, p. 38.) Two days later, Nurse Wilson responded to Boyd's grievance, explaining that a no-prolonged-standing profile was not indicated during his April 2006 examination and that he

should follow proper procedure when attempting to access the healthcare unit. (Doc. No. 126-2, p. 4.)

During an examination on June 2, 2006, Boyd was informed that his profiles would not be renewed. (Doc. No. 28-5, p. 35.)  At that time, he returned his back brace to a nurse. (*Id.*)  Later that day, Boyd returned to the health care unit on a stretcher, reporting that his "back went out . . . 5 minutes ago" and that he was suffering from sharp pains in his lower back. (Doc. No. 28-5, p. 14 of 50.)  Nurse McKinnon conducted an evaluation, noting that no erythema or deformities were noted, and referred Boyd to a physician. (*Id.*)  Shortly thereafter, Boyd filed this lawsuit in federal court. (Doc. No. 1.)

On June 11, 2006, Boyd went to the health care unit with complaints that both of his legs were numb and that a physician had taken away his profiles. (Doc. No. 28-10, p. 31.) Nurse Baker noted that Boyd was able to sit without difficulty, that he denied suffering from pain, and that he refused to be admitted to the infirmary for treatment by Dr. Darbouze. (*Id.*, p. 31.)  A nurse noted that, upon leaving the health care unit, Boyd stated that "I think I can work it out of my legs" and walked out of the room. (*Id.*, pp. 31-32.)

On June 21, 2006, Boyd went to the health care unit with complaints of "hurting all over," difficulty standing during pill call, and numbness down his back. (Doc. No. 28-10, p. 30.)  A nurse noted that Boyd was able to move his legs freely and sit in a chair while crossing and uncrossing his legs. (*Id.*)  She also noted that Boyd's face did not grimace

during a discussion with Nurse Wilson. (*Id.*) When Boyd requested a medical profile, a nurse advised him to submit a sick call request to Dr. Darbouze. (*Id.*)

On June 25, 2006, Boyd submitted a sick call request, in which he requested an examination by a physician for his back condition and the return of his back brace. (Doc. No. 28-5.) Nurse Wambles conducted an examination, noting that Boyd ambulated at a steady gait, that his range of motion was unimpaired, and that he was "able to twist/rotate to sign co-pay and sit/stand from chair." (Doc. No. 28-5, p. 11.) Nurse Wambles referred Boyd to Dr. Darbouze for treatment.

On August 20, 2007, Boyd submitted a grievance appeal, requesting profiles for a bottom bunk and back brace. (Doc. No. 126-2, p. 8.) A Prison Health Services Department Head responded to Boyd's grievance, stating that she and other members of Prison Health Services and the Alabama Department of Corrections would meet with him at a specified date concerning his complex medical history and concerns. (*Id.*)

### III.  DISCUSSION

#### A.  The Retaliation Claim

The defendants argue that all of Boyd's claims must be dismissed because as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), Boyd has failed to properly exhaust the administrative remedies available to him through the medical defendants' grievance procedure. (Doc. No. 28, p. 9; Doc. No. 86, p. 7; Doc. No. 126-2.).

Boyd has produced documents which indicate that he did file grievances about the treatment he received for his complaints about back pain. (Doc. No. 126-1, Ex. A-E) The court will take these at face value and address Boyd's deliberate indifference claim on the merits. However, Boyd has not come forward with any evidence that he has pursued administrative remedies on his retaliation claim.

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation, and a federal court cannot waive the exhaustion requirement. *Jones v. Bock,* ___ U.S. ___, 127 S.Ct. 910, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). *See also Booth*, 532 U.S. at 741;

*Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the plaintiff is required by the PLRA to *properly* exhaust his claims. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without some orderly structure on the course of its proceedings." *Id.* at 2386. Thus, "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 2384.

It is undisputed that Prison Health Services has a grievance procedure. First, an inmate may submit a written inmate grievance form to Prison Health Services. Thereafter, a Prison Health Services Department Head reviews the grievance and provides a response to the inmate. An inmate who "wish[es] to appeal this review . . . may request a form from the Health Services Administrator [and] [r]eturn the completed form to the attention of the Health Service Administrator . . . in the sick call request box or [by] giv[ing] it to the segregation sick call nurse on rounds." (Attach. to Doc. No. 35.) The undisputed evidentiary materials demonstrate that Boyd failed to appeal any grievance challenging the retaliation about which he complains in the instant complaint. The court therefore concludes that the claims for relief went in this cause of action are subject to dismissal as the plaintiff has not yet exhausted an available administrative remedy. *See Jones*, ___ U.S. at ___, 127 S.Ct. at

923; *Woodford*, ___ U.S. at ___, 126 S.Ct. at 2383; *Porter*, 534 U.S. at 524; *Booth*, 532 U.S. at 739. Consequently, the defendants' motion for summary judgment with respect to the plaintiff's retaliation claim should be granted, and this claim should be dismissed without prejudice.

### B. The Deliberate Indifference Claim

Boyd asserts that the medical defendants acted with deliberate indifference to his health by failing to provide adequate medical treatment for a back condition. The defendants deny they acted with deliberate indifference to Boyd's medical condition and, instead, maintain that they rendered appropriate and necessary treatment to Boyd for his condition.

To prevail on a claim concerning an alleged denial of medical treatment violative of the Constitution, a prisoner must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, a prison's medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court ... emphasized that

> not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth [or Fourteenth] Amendment." *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the [Constitution] only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice "not sufficient" to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). Thus, a medical care provider may be held liable under either the Eighth Amendment only for acting with deliberate indifference to a prisoner's health when the provider knows that the prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994).

The undisputed medical records indicate that Boyd received treatment for his complaints of back pain, including instructions on stretching, prescriptions for Motrin and

Tylenol, and profiles for a back brace, insoles, and bottom-bunk when medically indicated. Although Boyd maintains that he should have received some other type of treatment, the mere fact that he desired a different mode of medical treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505. Boyd presents no significantly probative evidence which demonstrates that the defendants in any way disregarded a substantial risk to his health. Indeed, the objective medical evidence indicates that Boyd has no serious back problem. Consequently, Boyd has failed to establish that the defendants acted with deliberate indifference. Summary judgment is therefore due to be granted in favor of the defendants with respect to Boyd's claims of deliberate indifference to his health.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.     The defendants' motions for summary judgment be GRANTED. (Doc. Nos. 28, 86.)

2.     The plaintiff's deliberate indifference claims be dismissed with prejudice.

3.     The plaintiff's remaining claims be dismissed without prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before March 5, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not

be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 21st day of February, 2008.

                                        /s/Charles S. Coody
                                     CHARLES S. COODY
                                     CHIEF UNITED STATES MAGISTRATE JUDGE